IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

KATHIE MARIE BURTRUM )
)
v. ) No. 2:11-0109
) Judge Nixon/Bryant
SOCIAL SECURITY ADMINISTRATION )

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for supplemental security income, as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which defendant has responded (Docket Entry No. 22). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 24),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff's application for benefits was originally construed to properly allege

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

disability onset as of June 30, 1996,[2] due to "[d]epression, fatigue syndrome, COPD, chest pains, I had a light stroke, skin cancers removed, cyst on brain, [and] bladder problems." (Tr. 199-200, 204) Her application was denied at the initial and reconsideration stages of agency review, whereupon plaintiff requested *de novo* hearing of her case by an Administrative Law Judge (ALJ). The ALJ hearing was held on May 27, 2009, and testimony was received from plaintiff and an impartial vocational expert. (Tr. 57-72) Plaintiff was represented by counsel at the hearing. On September 23, 2009, the ALJ issued a written decision finding plaintiff not disabled. (Tr. 83-90) However, upon plaintiff's petition to the SSA's Appeals Council, that ALJ decision was vacated and the matter remanded to the ALJ for further proceedings and the issuance of a new decision. (Tr. 93-95)

On remand, the ALJ reheard the case (Tr. 33-54). Plaintiff again appeared with counsel and gave testimony, as did an impartial vocational expert. The ALJ took the matter under advisement until June 23, 2011, when she issued a new decision finding plaintiff not disabled. (Tr. 14-23) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2001.

2. The claimant has not engaged in substantial gainful activity since August 14, 2006, the amended alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: Hepatitis C, sleep apnea, bipolar disorder, degenerative disc disease, chronic obstructive pulmonary disease, chronic fatigue, GERD (20 CFR 404.1520(c) and 416.920(c)).

---

[2]Plaintiff subsequently amended her alleged onset date to August 14, 2006, the date of her application for benefits. (Tr. 14)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can do only simple, low stress work and that the claimant can have little interaction with people.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 19, 1961 and was 45 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 14, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-17, 19, 22-23)

On September 20, 2011, the Appeals Council denied plaintiff's request for

review of the ALJ's decision (Tr. 1-4), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The undersigned incorporates herein the statement of facts contained in defendant's response brief (Docket Entry No. 22 at 2-9), as follows:

A. Medical Evidence

Plaintiff's primary care provider for several years, before and during the relevant time period, was the office of Jonathan Allred, M.D.; Plaintiff was seen for treatment of various physical and mental complaints, including anxiety and depression (*e.g.*, Tr. 490-91, 493, 681-85, 746-57). On November 2, 2006, Dr. Allred completed a form provided by the Disability Determination Section (Tr. 488-49). When asked to check any mental status abnormalities Plaintiff had, he checked as follows: memory: significant impairment; thinking: warrants psychiatric evaluation; affect: warrants psychiatric evaluation; mood: depressed and anxious; mood severity: mild-moderate; psychomotor disturbance: slowed; hallucinations/delusions: never; drug/alcohol abuse: none; mental retardation present: no; interactions with others: adequate; and concentration: warrants psychiatric evaluation (Tr. 488). He wrote that the mental diagnosis was "Anxiety/Depression-?Bipolar Disorder" (Tr. 488). When asked to elaborate on the condition, he wrote that Plaintiff's severe anxiety and depression impacts her thought process, concentration, decision-making, and ability to perform normal activities of daily living (ADLs) (Tr. 489).

According to evidence in the record, Plaintiff received mental health treatment from LifeCare Family Services (LifeCare) between September 2006 and April 2007 (Tr. 661-72, 675-76, 700-03). At the first visit, Plaintiff was diagnosed with major depressive disorder, recurrent, severe with psychotic features; generalized anxiety disorder; and rule out mood disorder (Tr. 662).

4

She was assessed a GAF score of 46 (Tr. 662). At the next visit, the diagnoses were noted to be schizoaffective disorder; generalized anxiety disorder; and rule out mood disorder (Tr. 663). She was again assessed a GAF score of 46, and prescribed medications (Tr. 663). On November 10, 2006, Plaintiff reported that she felt that her medications were helping, but that she was still struggling with some symptoms (depression and irritability), and was still having some suicidal ideation (Tr. 665). Her medications were adjusted, and she was again assessed a GAF score of 46 (Tr. 665).

On December 5, 2006, Plaintiff underwent a psychiatric consultative examination with Mark Loftis, M.A., S.P.E. (Tr. 602-06). Mr. Loftis diagnosed Plaintiff with bipolar disorder, not otherwise specified, and paranoid personality trait (Tr. 605). He opined that Plaintiff had reasonable cognitive abilities and appeared capable of learning; appeared to have capable reasoning recall in completing tasks; and was moderately to markedly impaired in dealing with stressing situations in day-to-day life situations (Tr. 605). He further opined that if Plaintiff was placed in a very stressful situation, she would decompensate, and that her functional limitation regarding her ability to deal with work-related stressors was in the mild to markedly range (Tr. 605).

On December 19, 2006, a State agency consultant, Frank D. Kupstas, Ph.D., completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment (Tr. 607-20, 621-24).

At a visit to LifeCare on December 8, 2006, Plaintiff's medications were adjusted again, and she was assessed a GAF score of 46 (Tr. 667). On January 11, 2007, Plaintiff complained of an increase in anxiety and irritability (Tr. 669). Her medications were adjusted and she was accorded a GAF of 46 (Tr. 669).

Upon the advice of Dr. Allred's office, Plaintiff presented to the emergency room on February 5, 2007, complaining of depression and anxiety, which had been worse for the past month (Tr. 652-58, 681). She was provided with medication, advised to see her mental health provider that week, and discharged (Tr. 655, 657).

On February 8, 2007, Plaintiff reported to LifeCare that she did not like Abilify, and requested a medication change (Tr. 671). Her GAF score remained

46 (Tr. 671). A LifeCare treatment note from March 9, 2007 reflects that Plaintiff was pleasant and cooperative, had good eye contact, and had a constricted affect with depressed mood (Tr. 675). Plaintiff reported increased anxiety, depression, and tearfulness; denied suicidal and homicidal ideation, as well as auditory and visual hallucinations; and endorsed racing thoughts and excessive irrational worries (Tr. 675). She also reported medication compliance, and that her medications had been helpful, and denied side effects or concerns with her current medications (Tr. 675). Her GAF remained 46, and she was prescribed a new medication (Tr. 675).

On March 19, 2007, Plaintiff called LifeCare, "stating that she is having a hard time and is becoming more and more depressed" (Tr. 677). LifeCare advised Plaintiff to go to the emergency room (Tr. 677). Plaintiff did present to the emergency room complaining of depression; once again, Plaintiff was provided with medication, advised to see her primary care provider or mental health provider, and discharged (Tr. 637-44).

On March 29, 2007, Plaintiff reported to LifeCare that her depression had increased throughout the month, and that she had low energy and lack of motivation (Tr. 700). Plaintiff was tearful during the visit; reported racing thoughts and suicidal ideation without a plan; and denied psychotic features (Tr. 700). Plaintiff's medications were adjusted, and she was assessed with a GAF score of 46 (Tr. 700). At a visit to LifeCare on April 27, 2007, Plaintiff reported doing better with Zoloft, and denied any negative problems with it and requested it be increased (Tr. 702). Plaintiff also reported having less depression and anxiety, and that her energy and motivation were about the same (Tr. 702). Zoloft was increased, and Plaintiff's GAF remained 46 (Tr. 702).

A second State agency consultant, Jeffrey T. Bryant, Ph.D., completed a Psychiatric Review Technique form and a Mental Residual Functional Capacity Assessment, on August 17, 2007 (Tr. 719-32, 733-36).

The record contains mental health treatment notes from Volunteer Behavioral Health Care System (VBHCS) from November 2008 through December 2010 (Tr. 784-90, 899-923). [Plaintiff refers to an April 21, 2008 VBHCS Discharge Aftercare Summary (Plaintiff's Memorandum, p. 6). However, this was the medical record belonging to another person, which was erroneously included in the originally-filed transcript, and has since been removed (*see* Tr. 879-80).]

6

When Plaintiff was seen on November 5, 2008, she reported that her depression persisted and that the increase in Wellbutrin had not helped her depression (Tr. 784). Her mental status examination (MSE) revealed the following: subdued affect; narrow range of affect; slow speech/thought process; normal thought content/perceptions; normal memory/orientation; in moderate distress; neatly and appropriately dressed; depressed mood; some psychomotor retardation; and no unusual thinking noted (Tr. 784). She was assessed with a GAF score of 54 (Tr. 785). She was diagnosed with bipolar I disorder, severe, without psychotic features, rule in post-traumatic stress disorder and major depressive disorder (Tr. 785). On November 6, 2008, a Clinically Related Group (CRG) Form was completed by VBHCS, indicating that Plaintiff had marked impairments in ADLs; concentration, task performance, and pace; and adaptation to change, and moderate impairment in interpersonal functioning (Tr. 781-83).

At a visit to VBHCS on December 3, 2008, Plaintiff reported that she had felt less depressed with the increase in Wellbutrin (Tr. 787). She had an unremarkable MSE, and was assessed a GAF score of 62 (Tr. 787-88). On January 28, 2009, it was noted that Plaintiff "continue[d] to do well on present regimen" and she again had an unremarkable MSE (Tr. 790). On June 2, 2009, Plaintiff reported feeling a little more depressed without Risperdal, which was discontinued because of side effects (Tr. 899). She had a subdued affect, narrow range of affect, depressed mood, was in moderate distress, and was quiet and nonspontaneous, but her MSE was unremarkable otherwise (Tr. 899). She was assessed with a GAF score of 60 (Tr. 900). On August 10, 2009, Plaintiff had run out of Ambien and Abilify, and reported not doing well because of poor sleep, and reported that she had been more depressed and snappy (Tr. 902). She had a subdued affect, was in mild-moderate distress, and her mood was depressed; otherwise, she had an unremarkable MSE (Tr. 902). Her GAF score was 60 (Tr. 903). On September 8, 2009, Plaintiff was back on her medications and stated that she was feeling well and offered no complaints (Tr. 905). Besides a subdued affect, she had an unremarkable MSE, and her GAF score was 68 (Tr. 905-06). Similarly, on December 8, 2009, Plaintiff reported that her medication was working well; that she had no side effects or problems with mood swings; and that she "[c]ontinue[d] to have some low grade [symptoms] of depression but overall copes well" (Tr. 908). Her MSE was unremarkable, except that her memory/orientation was mildly impaired; her GAF score was 68 (Tr. 908-09). Another CRG Form was completed on December 8, 2009, indicating that Plaintiff had mild impairments in ADLs and

interpersonal functioning; no impairment in concentration, task performance, and pace; and moderate impairment in adaptation to change (Tr. 881-83).

Plaintiff was seen again at VBHCS on March 3, 2010, at which time "[s]he report[ed] that her present medications are controlling her mood well without any side effects" (Tr. 911). Her MSE was unremarkable, except that her memory/orientation was mildly impaired (Tr. 911). Her GAF score remained 68 (Tr. 912). On June 1, 2010, Plaintiff reported that she continued to have residual depressive symptoms but reported that overall she was coping fairly well; on August 31, 2010, she reported that she felt that her medications were helping (Tr. 914, 917). At both visits, her MSE was unremarkable, and her GAF score was 68 (Tr. 914-15, 917-18). A third CRG Form was completed on August 31, 2010, indicating that Plaintiff had mild impairments in ADLs; interpersonal functioning; and adaptation to change, and no impairment in concentration, task performance, and pace (Tr. 884-86).

When she was seen at VBHCS on November 19, 2010, Plaintiff reported that she had been unable to obtain Wellbutrin because of insurance problems, and she reported increased depression and anxiety (Tr. 919). However, besides a tangential speech/thought process, she had an unremarkable MSE and her GAF score remained 68 (Tr. 919-20). On December 28, 2010, Plaintiff reported that Wellbutrin had been approved by her insurance, and was helping her depression, but she still had residual problems with depression (Tr. 921). Her MSE was unremarkable, and she was assessed a GAF score of 68 (Tr. 921-22).

Plaintiff underwent a second psychological consultative examination with Mr. Loftis on December 28, 2010 (Tr. 852-56). Mr. Loftis diagnosed Plaintiff with bipolar disorder, not otherwise specified (Tr. 855). He also noted the following:

> Understanding and remembering: [Plaintiff] has a moderate impairment to understand and recall instructions. Simple, repetitive tasks are not likely to be significantly impaired.
>
> Concentration, persistence and pace: [Plaintiff] has a moderate impairment in concentration skills, persistence and ability to maintain a competitive pace.
>
> Social interaction: [Plaintiff] apparently has problems with

8

> social interactions. It is believed that she is moderately to markedly impaired in social interaction skills necessary to deal with coworkers and supervisors.
>
> Adaptation: [Plaintiff] is moderately limited in her ability to adapt to changes found in most work situations.

(Tr. 855). Mr. Loftis completed a Medical Source Statement of Ability To Do Work-Related Activities (Mental) on the same day, checking that Plaintiff had several moderate restrictions in her abilities to understand, remember, and carry out instructions, explaining that Plaintiff's depressive symptoms and her social awkwardness related to her psychiatric symptoms may prevent her from being able to function effectively (Tr. 849-51). He also checked that Plaintiff had moderate to marked restrictions in her abilities to interact appropriately with supervisors, co-workers, and the public, and to respond to changes in the routine work setting (Tr. 850).

B. Hearing Testimony

At the first hearing, Plaintiff's testimony included that she rated her pain as a seven, and her fatigue as severe (Tr. 64-66). At the second hearing, Plaintiff testified, among other things, that she has problems with fatigue, and that she would rate her fatigue as moderate to severe (Tr. 36, 38, 44). She reported urinary stress incontinence for four to five years, and that she goes to the bathroom every hour or two hours (Tr. 43-44). She further testified that she would rate her pain as a six (Tr. 45). She also testified that she lays down five or six times a day (Tr. 45-46).

## III. Conclusions of Law

### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1) A claimant who is engaging in substantial gainful activity will not be found

to be disabled regardless of medical findings.

2) A claimant who does not have a severe impairment will not be found to be disabled.

3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4

11

(S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff primarily alleges error in the ALJ's weighing of the opinion of consultative psychological examiner Mark Loftis, whom plaintiff claims "unequivocally opined that the Plaintiff was incapable of working." (Docket Entry No. 15 at 13) Mr. Loftis evaluated plaintiff on referral from the SSA on two occasions, first in December 2006, and then four years later, in December 2010. In reporting the results of both visits with plaintiff, Mr. Loftis diagnosed "Bipolar disorder, NOS" (Tr. 815, 855), and assessed her with no more than moderate functional impairment in the domains of understanding and remembering; concentration, persistence and pace; and, adaptation. (Tr. 855) However, in the domain of social interaction, and particularly in the context of stressful situations at work, Mr. Loftis assessed plaintiff as being moderately to markedly impaired in her ability to deal with coworkers and supervisors. (Tr. 815, 850, 855)

First, it is clear that Mr. Loftis did not opine unequivocally that plaintiff was incapable of working, or even that she had limitations which would unquestionably entitle her to an award of benefits if credited. Rather, Mr. Loftis, a non-treating psychological examiner, opined that plaintiff's mental impairments would be expected to produce

limitations ranging in severity, from a low end (moderate) which would not appear to justify a finding of disability. (Tr. 51)³ The ALJ noted Mr. Loftis' opinions of plaintiff's moderate-to-marked impairment in dealing with stress and of her potential to decompensate if placed in very stressful situations, but found these opinions contradicted by the other medical evidence in the record, including the June 2007 report of consultative psychological examination by Dr. Christopher Edwards, Ph.D.,⁴ the conclusions of the nonexamining state agency psychological consultants,⁵ and, most importantly, the records of plaintiff's mental health treatment with Volunteer Behavioral Health Care System. The ALJ cited the latter records in finding that plaintiff's treatment had improved her mental health symptoms, noting the references therein to plaintiff's reports that her medications were controlling her symptoms and that she was doing well overall, as of December 2008; January, June, September, and December 2009; and March, June, and August 2010. (Tr. 17, 20) While plaintiff argues that certain other reports document periods of more severe mental symptoms, including a Clinically Related Group assessment form completed on November 6, 2008, which rates plaintiff as markedly limited in three out of four functional domains (Tr. 781-83), it is clear that despite some occasional fluctuation in plaintiff's symptoms, the ALJ's

---

³In response to plaintiff's counsel's hypothetical question based on Mr. Loftis' assessment of "moderate to marked impairment," the vocational expert testified: "Well, [if] this individual has the area of marked then this individual could not [do] . . . any kind of work at all."

⁴Dr. Edwards was not impressed by the severity of plaintiff's mental limitations, finding them mild or minimal, while noting that the results of his evaluation were only minimally valid since plaintiff was less than cooperative, gave minimal effort on testing until pressed, and generally appeared to exaggerate her symptoms. (Tr. 705-14)

⁵These consultants found plaintiff's work-related mental limitations to be moderate at worst. (Tr. 621-22, 733-34)

finding of moderate limitations accommodated by the restriction to "low stress work" involving "little interaction with people" is supported by substantial evidence on the record as a whole. This finding was not the result of any erroneous application of the law, but rather a thorough and reasonable exercise within the ALJ's province of weighing the conflicting medical evidence in light of his finding of plaintiff's overall credibility, and without unjustifiably discarding any contrary treating source opinion.[6]

Plaintiff further argues that the ALJ erred in failing to credit the vocational expert testimony which found no available work for a person limited as described in Mr. Loftis' report. However, as explained above, the ALJ appropriately rejected the report of Mr. Loftis, and so was not bound to credit any testimony which relied on that report. Plaintiff further argues that the vocational expert testified that a person who had to remove herself from her work station to use the restroom once or twice per hour, or whose pain required that she lie down frequently throughout the workday, would be unemployable. (Tr. 52-53) However, this testimony is likewise of no moment, because plaintiff testified that she used the restroom at 1-2 hour intervals, not up to twice per hour (Tr. 44), and the ALJ did not credit plaintiff's testimony that her symptoms were so severe as to require her to lie down throughout the day.

---

[6]While plaintiff argues that the opinion of her treating, family physician, Dr. Allred, supports the existence of marked mental limitations, Dr. Allred merely opined on a form presented to him in November 2006 that plaintiff "has severe anxiety/depression which requires mental health services [and] impairs her thought processes, concentration, decisionmaking, and ability to perform normal activities [of] daily living." (Tr. 489) The ALJ recognized these limitations and did not discount plaintiff's severe mental illness, but found that it restricted her ability to work, limiting her to only simple, low stress jobs that do not require more than minimal interaction with people. (Tr. 19)

14

Finally, plaintiff makes a passing argument that her subjective complaints of pain were improperly rejected, in support of which she merely cites the legal standard for evaluating complaints of disabling pain. However, for the reasons given in defendant's response brief (Docket Entry No. 22 at 16-17) and in the ALJ's opinion itself (Tr. 19-20), the undersigned concludes that the ALJ's analysis and findings on the credibility of plaintiff's subjective complaints are well supported and legally sufficient.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 1st day of November, 2013.

                                           s/ John S. Bryant
                                           JOHN S. BRYANT
                                           UNITED STATES MAGISTRATE JUDGE